*1013 OPINION.
Smith:
1. The first question presented by this proceeding is whether the petitioner corporations are affiliated within the purview of section 240 (b) of the Revenue Act of 1918,. for the years 1918 and 1919. This provides:
For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all of the stock of the other or others, or (2) if substantially all the stock of two or more corporations is owned or controlled by the same interests.
The Commissioner held that the Detroit Company and the Cleveland Company were affiliated for the years 1918 and 1919 and that the Horse Company and the Realty Company were also affiliated in a separate group for the same years; but that the Land Company was not affiliated with either of the two groups. In the light of the evidence we are of the opinion that the Horse Company, the Realty Company and the Land Company were affiliated during the taxable years.
From January 18, 1918, the Detroit Company owned 50 per cent of the stock of the Cleveland Company but no part of the stock of the other companies. There is no evidence that the Detroit Corn-pan^ had any actual control over the shares of stock which it did not own. To be sure a majority of the stock in each company was owned by Benjamin Gotfredson, president of the Detroit Company, and Benjamin Gotfredson may well be held to be an affiliated interest. We have held, however, in Appeal of Block Street Wharf & Warehouse Co., 2 B. T. A. 183, that where one corporation owned.50 per cent of the stock of another corporation and the president of the first corporation owned the balance of the stock of the second com: pany, that fact alone did not constitute the two corporations affiliated. Similarly we must hold here that the Detroit Company did not own directly or control through closely affiliated interests sub *1014 stantially all the stock of the other companies so as to constitute an affiliated group.
It remains to be considered whether substantially all the stock of the five companies was “ owned or controlled by the same interests.” Although there is evidence that the shares of stock held by other stockholders than Joyce were controlled by Benjamin Gotfredson and M. H. Coleman there is no evidence that these individuals had any actual control over the shares of stock standing in the name of Joyce. We are of the opinion that based on percentages alone the ownership or control by Gotfredson and Coleman of substantially all of the stock of the Horse Company, the Realty Company, and the Land Company, but of only 75 per cent of the stock of the Detroit Company, and of between 82y2 and 87y2 per cent of the Cleveland Company, can not be regarded as substantially all the stock of those companies. Industrial Co. of Binghamton, 2 B. T. A. 360; United Metal Spinning Co., 2 B. T. A. 520; Wadhams & Co., 2 B. T. A. 569; Ullman Manufacturing Co., 2 B. T. A. 1294. The test of the statute is ownership or control of substantially all the stock of all of the corporations of the affiliated group by the same “ interests.” We do not have that situation here. The Detroit and Cleveland Companies were engaged in a business essentially different from those carried on by the other three companies. The fact that Gotfredson had absolute control of the business methods, policies, and relations of all of the corporations is not decisive of the issue. Appeals of Rishell Phonograph Co., 2 B. T. A. 229; Watsontown Brick Co., 3 B. T. A. 85; Adaskin-Tilley Furniture Co. v. Commissioner, 6 B. T. A. 316. We are of the opinion that the Detroit and Cleveland Companies were affiliated in one group for the years 1918 and 1919, as found by the respondent, and that the Horse Company and the Realty Company were affiliated in another group, and that the Land Company from the date of its organization in 1918, was also affiliated in the same group. _ Deficiencies should be computed accordingly.
Upon the second point it is contended on behalf of the petitioners that the Detroit Company made a sale of its claim against the Saxon Motor Car Co. in 1918 for $5,000 and sustained a loss of $45,700.82 on the transaction; that from the date of the sale of this claim to Gotfredson there was an appreciation in the value of the claim and that the appreciation in the value from $5,000 to its worth at the time that it was reassigned to the Detroit Company constitutes a paid-in surplus of the Detroit Company and that the Detroit Company realized no income from collections upon the note in the year 1919. -
The evidence with regard to this transaction is decidedly unsatisfactory. Gotfredson, who should have a lively recollection with *1015 regard to the transaction if it was bona fide, deposed as follows with respect thereto:
Q. It appears from these pleadings here that the claim of the American Auto Trimming Co. at Detroit against the Saxon Motor Car Co. was purchased by you personally for $.5,000. Do you recall that?
A. I remember something about it.'
Q. Who fixed the price of $5,000 for that claim?
A. I couldn’t remember.
Q. Can you state whether the amount of the claim, was approximately $50,000?
A. No, I couldn’t.
Q. Do you recall your assigning the claim back to the American Auto Trimming Co., and getting your $5,000?
A. No, I don’t remember. You see Mr. Coleman is the secretary and treasurer, and it was just kind of an every day occurrence what I would sign and what I would do. I don’t remember.
Q. That is what I am asking you, Mr. Gotfredson. Wouldn’t the amount of $5,000 be fixed by you, and not by some subordinates?
A. It would naturally be agreed to by me, if I gave a check for it or paid for it.
Q. Wouldn’t you be the one who would set the price?
A. I would not say that. It might be, and it might not.
Q. Did you take over that claim just for convenience, because you were in close connection with the Saxon Motor Car Co., and could handle it for your own eompany to advantage?
A. I could not remember the details.
It is further to be noted that there is no satisfactory evidence as to whether the note was assigned to Gotfredson in 1918 or in 1919. The deposition of M. H. Coleman, secretary and treasurer of the Detroit Company, upon this point was in part as follows:
Q. (By Mr. Doyle) What was the date of the sale of the Saxon Motor .Car Co. claim to Mr. Gotfredson?
A. Sometime in December of 1918, I don’t remember the exact date. I think I testified to it this morning.
Q. Was the money paid at that time? *
A. He paid the money in January of 1919, he paid the company the money. Do you mean that?
Q. Yes, that is what I mean, the time that he bought the claim.
A. He paid the company Jasnuary 1st, 1919, or in January of 1919, I do not just remember the date.
Q. Why do you say that the sale was made in 1918?
A. Because that is when it was made.
Q. Was there a contract drawn up in connection with it?
A. No, I do not think there was a contract drawn up. It was for closing the books that that sale was made.
Q. When would you close the books?
A. The books were closed at the end of the year, that is, as of the end of the year.
*1016 The petitioners have not shown that any loss on account of the sale of the note was actually sustained during either of the years 1918 or 1919.
Judgment will be. entered on 16 days’ notice, under Rule 60.